**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HENRY DREW AND MICHAEL DOERR, <br><br> Plaintiffs, <br><br> v. <br><br> CHURCH MUTUAL INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 13-cv-01906 (JLL)(MAH) <br><br> OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of Plaintiff Henry Drew ("Plaintiff")'s and Defendant Church Mutual Insurance Company ("Defendant")'s cross motions for summary judgment. The Court has considered the submissions made in support of and in opposition to the cross motions and decides this matter following oral argument. For the reasons set forth below, Defendant's motion is **GRANTED**.

I.  BACKGROUND

Plaintiff is a former priest who served at Saint Mary's Abbey in Morristown, New Jersey and also as a weekend assistant at Our Lady of the Mount Roman Catholic Church in the Diocese of Metuchen, where Michael Doerr ("Doerr") and his wife were parishioners. (Def.'s 56.1 Statement ¶¶ 1, 4, 6). While serving as a priest at Our Lady of the Mount Church, Plaintiff engaged in an extra-marital affair with Doerr's wife. (Pl.'s 56.1 Statement ¶ 4; Def.'s 56.1 Statement ¶ 14). In early 2009, Doerr's wife raised thoughts about ending their ten-year marriage. (Pl.'s 56.1 Statement ¶ 2; Def.'s 56.1 Statement ¶ 15). Thereafter, in March 2009,

Doerr contacted Plaintiff to seek guidance regarding his marriage problems. (Pl.'s 56.1 Statement ¶ 3; Def.'s 56.1 Statement ¶¶ 15, 18). At the time Plaintiff met with Doerr, Plaintiff had already engaged in a physical and intimate relationship with Doerr's wife. (Pl.'s 56.1 Statement ¶¶ 4, 7; Def.'s 56.1 Statement ¶¶ 15, 16, 18, 19, 21, 23). During the meeting, Plaintiff failed to disclose the affair to Doerr. (Pl.'s 56.1 Statement ¶ 8; Def.'s 56.1 Statement ¶ 38). Plaintiff directed Doerr not to make any further effort to save his marriage and told Doerr that he should accept his wife's decision to seek a divorce. (Pl.'s 56.1 Statement ¶ 4; Def.'s 56.1 Statement ¶¶ 22, 39). Plaintiff did not refer Doerr to others within the church for assistance. (Pl.'s 56.1 Statement ¶¶ 6, 8; Def.'s 56.1 Statement ¶ 38).

Sometime around May 2009, Doerr discovered the affair. (Pl.'s 56.1 Statement ¶ 7; Def.'s 56.1 Statement ¶ 24). Upon his discovery, Doerr confronted his wife and informed Plaintiff of his knowledge of the affair via text message. (Pl.'s 56.1 Statement ¶ 9; Def.'s 56.1 Statement ¶¶ 25, 41). Plaintiff informed his supervisors about the affair and Doerr's discovery of it. (Pl.'s 56.1 Statement ¶ 10). Plaintiff's supervisors directed him to leave the United States in order to avoid civil process from Doerr. (Pl.'s 56.1 Statement ¶ 11). In the summer of 2009, Plaintiff secretly returned to the United States and left the ordained priesthood. (Pl.'s 56.1 Statement ¶ 14).

On February 23, 2011, Doerr brought an action against Plaintiff in the Superior Court of New Jersey, Law Division, Essex County ("the underlying action") for breach of fiduciary duty and negligent infliction of emotional distress. (Pl.'s 56.1 Statement ¶¶ 1, 17, 19; Def.'s 56.1 Statement ¶ 33). In the underlying action, Doerr claimed that, because Plaintiff was having a sexual affair with Doerr's wife, Plaintiff had an irreconcilable conflict of interest in providing marriage counseling to Doerr. (Pl.'s 56.1 Statement ¶ 5; Def.'s 56.1 Statement ¶ 38). Doerr

2

further alleged that Plaintiff failed to disclose his sexual relations with Doerr's wife, used the counseling as a vehicle to "cover up" the affair, and failed to refer Doerr to another priest for counseling. (Pl.'s 56.1 Statement ¶¶ 6, 8, 17, 18, 19; Def.'s 56.1 Statement ¶¶ 39, 42, 43).

Thereafter, on April 27, 2011, the underlying complaint was sent to Defendant with a request that Defendant provide a defense and indemnification for the claims made against Plaintiff in the underlying action. (Pl.'s 56.1 Statement ¶ 24; Def.'s 56.1 Statement ¶ 47). By an email dated April 29, 2011, and in a subsequent letter dated July 18, 2011, Defendant informed Plaintiff that it did not insure the Roman Catholic Diocese of Metuchen and declined to indemnify or defend Plaintiff in the underlying action. (Pl.'s 56.1 Statement ¶ 25; Def.'s 56.1 Statement ¶ 48).

A. Procedural History

On February 28, 2013, Plaintiff filed a complaint seeking declaratory judgment against Defendant in the Superior Court of New Jersey, Law Division, Essex County, in which he sought insurance coverage for the claims asserted in the underlying action. (Def.'s 56.1 Statement ¶ 60; Def.'s Ex. 11). On March 26, 2013, Defendant removed this matter to the United States District Court for the District of New Jersey. (CM/ECF No. 1). Defendant then filed its answer with this Court on April 3, 2013. (CM/ECF No. 3).

The underlying action was assigned to trial on October 10, 2013 before Justice Francine A. Schott. At that time, counsel for Doerr stipulated that the only theories he was pursuing were negligence and breach of fiduciary duty. (Pl.'s 56.1 Statement ¶¶ 17, 19; Def.'s 56.1 Statement ¶¶ 42, 43). The parties agreed to settle and subsequently entered into an assignment whereby Plaintiff assigned to Doerr his claim for indemnification under the Defendant's insurance policy. (CM/ECF No. 20).

3

On November 1, 2013, the United States District Court for the District of New Jersey entered an Amended Pre-Trial Scheduling Order, which required that all dispositive motions be filed by January 13, 2014. (CM/ECF No. 18). By order dated January 2, 2014, Doerr was permitted to intervene in this matter to assert the indemnification claim assigned to him by Plaintiff. (CM/ECF No. 22). Following discovery, Plaintiff and Defendant filed cross motions for Summary Judgment. (CM/ECF No. 23; 24). This Court held oral argument on April 17, 2014. (CM/ECF No. 41).

At oral argument, the Court determined that the only relevant provision of Defendant's policy pertaining to this case is the "Counseling Professional Liability Coverage" provision. (Tr. at 25-27; Pl.'s Ex. 2 at 78).

B. Relevant Policy Provision

The relevant "Counseling Professional Liability Coverage" provision provides coverage for injuries caused by a "counseling incident" which occurs during the policy period. (*See* Tr. at 25-27; Pl.'s Ex. 2 at 78).

The insurance policy does not provide coverage for an injury "arising out of any actual or alleged act of sexual misconduct or sexual molestation." (*Id.* at 79 (internal quotations omitted)). The policy defines "counseling incident" and "sexual misconduct" as follows:

> "Counseling incident," means any act or omission in the furnishing of counseling services. Any such act or omission, together with all related acts or omissions in the furnishing of such services to any one person, shall be considered one claim subject to the Each Claim Limit of Insurance in force at the time the first "counseling incident" covered by this policy occurred.
>
> "Sexual Misconduct or sexual molestation" is any activity by anyone (whether an adult or child) which is sexual in nature whether permitted or unpermitted, including but not limited to,

4

> sexual assault, sexual battery, sexual relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

(*See* Pl.'s Ex. 2 at 79, 81-82). The insurance policy was amended to include a "Prior Acts Coverage Endorsement Counseling Professional Liability" ("endorsement"). (*See* Pl.'s Ex. 2 at 83). The additional insurance provided by the endorsement only applies in the instance where the insured did not have prior knowledge of the "counseling incident" before the "Prior Acts Date" of July 1, 2010. (*See id.* at 3, 83). The relevant portion of the endorsement provides that:

> The additional insurance provided by this endorsement applies only to a "counseling incident" that results in a claim made or "suit" brought after the Prior Acts Date shown in the Declarations Page and during the Reporting Period stated in the Declarations Page.
>
> **The additional insurance provided by this endorsement does not apply to any "counseling incident" that any insured had knowledge of before the Prior Acts date shown in the Declarations Page.**

(*See id.*) (emphasis added).

## II.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The moving party must first demonstrate that there is no genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317 (1986). Courts construe facts and inferences in the light most favorable to the non-movant in order to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence

5

is such that a reasonable jury could find for the non-moving party. *Id.* at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). "Thus, if a reasonable fact finder could find in the nonmovant's favor, then summary judgment may not be granted." *Norfolk Southern Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008).

## III. DISCUSSION

At oral argument the Court determined that the only issue to be resolved is whether Plaintiff should be covered under the "Counseling Professional Liability" provision, and thus the Court limits its analysis to the parties' arguments pertaining to that provision. (*See* Tr. at 9:24-10:1-2). Plaintiff moves for partial summary judgment on the following basis: the claims made by Doerr in the underlying action against Plaintiff are covered as a "counseling incident," and, as a result, Plaintiff should be indemnified by Defendant. (Pl.'s Br. at 8; CM/ECF No. 23). Defendant moves for summary judgment claiming that any "counseling incident" took place before the coverage period and is excluded from the "prior acts" coverage because Plaintiff had knowledge of the incident prior to July 1, 2010. (Def.'s Br. 20-21; CM/ECF No. 24).

As a preliminary matter, under New Jersey law[1], "the interpretation of insurance contracts requires generous readings of coverage provisions, narrow readings of exclusionary provisions, resolution of ambiguities in favor of the insured, and construction consistent with the insured's reasonable expectations." *Cobra Products, Inc. v. Federal Ins. Co.*, 317 N.J. Super. 392, 400 (App. Div. 1998). The insured bears the initial burden of establishing that the claim is "within the basic terms of the policy." *S.T. Hudson Eng'rs, Inc. v. Pa Nat'l Mut. Cas. Co.*, 388

---

[1] Plaintiff asserts that New Jersey law applies. Defendant does not dispute this nor argue that Wisconsin law should apply. Accordingly, the Court applies New Jersey law to this case.

6

N.J. Super. 592, 603 (App. Div. 2006) (citation omitted). The insurer bears the burden of proving the applicability of a provision excluding coverage. *See e.g., Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997) ("In general, insurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion."). "When considering an exclusion of coverage, any ambiguity 'must be strictly construed against the insurer so that reasonably anticipated coverage is provided.'" *Am. Wrecking Corp. v. Burlington Ins. Co.*, 400 N.J. Super. 276, 282-83 (App. Div. 2008). However, "exclusions are presumptively valid and will be given effect if specific, plain, clear, prominent, and not contrary to public policy." *Chunmuang*, 151 N.J. at 95 (citation omitted).

There is no dispute that the insurance policy provision at issue is an "occurrence made" provision. (*See* Tr. at 24:22-24). Under an occurrence policy, "the insured is indemnified for acts or occurrences which take place within the policy period[;]" and "under a claims made policy[,] the insured is indemnified for claims made during the policy period regardless of when the acts giving rise to those claims occurred." *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 59 (3d Cir. 1982). Furthermore, "the requirement of notice in an occurrence policy is subsidiary to the event that invokes coverage …." *Zuckerman v. Nat'l Union Fire Ins. Co.*, 100 N.J. 304, 324 (1985). Because the policy at issue is an occurrence policy (Tr. at 24:22-24), the Court must determine whether the occurrence took place prior to the start date of the policy. *See Appalachian Ins. Co.*, 676 F.2d at 59 (holding that where the subject policy was characterized as an occurrence policy, the district court then "had to determine … when the occurrence or occurrences took place").

Plaintiff argues that he is entitled to coverage on the basis that his acts constituted a "counseling incident" within the meaning of the policy. (Pl.'s Br. 8). The policy defines a

7

"counseling incident" as an act or omission in the furnishing of counseling services. (Pl.'s Ex. 2 at 82). At the time of the counseling session between Plaintiff and Doerr, Plaintiff failed to disclose his relationship with Doerr's wife. (Pl.'s 56.1 Statement at ¶¶ 5, 8; Def.'s 56.1 Statement at ¶ 38; Tr. at 15:20-22). The failure by Plaintiff to inform Doerr of his ongoing sexual relationship with Doerr's wife arguably constitutes exactly the "kind of thing that the exclusion aims at preventing[.]" (*See* Tr. 17:13-15).

The counseling liability policy provision, however, only applies if the "counseling incident" occurred <u>during</u> the policy period. (*See* Pl.'s Ex. 2 at 78) (emphasis added). The policy commenced on July 1, 2010 and expired on July 1, 2013. (Pl.'s Ex. 2 at 3). The "counseling incident" at issue took place in March 2009. (Pl's 56.1 Statement ¶ 3; Def.'s 56.1 Statement ¶ 37; Tr. at 4:23-25). Thus, the "counseling incident" will only be covered if it falls within the "prior acts" coverage amendment. *See e.g., S.T. Hudson Eng'rs. Inc.,* 388 N.J. Super at 603 (holding that the insured bears the initial burden of establishing that the claim falls "within the basic terms of the policy").

As explained above, the policy includes an amendment that provides coverage for "Prior Acts." This provision relates to incidents that occurred before the "Prior Acts Date" of July 1, 2010. Specifically, the policy states that:

> The additional insurance provided by this endorsement does not apply to any "counseling incident" that any insured <u>had knowledge of before the Prior Acts Date</u> shown in the Declarations Page.

(Pl.'s Ex. 2 at 83) (emphasis added). Therefore, in order for coverage to apply to a counseling incident that occurred prior to the commencement of the policy, the insured had to have been unaware of the incident at the policy's start date. (Pl.'s Ex. 2 at 83). In light of the facts that the policy commenced on July 1, 2010 and that the alleged "counseling incident" and subsequent text message from Doerr occurred in 2009, there is no question that Plaintiff had knowledge of

8

the incident at the time the policy began. (Pl.'s Ex. 2 at 3; Pl.'s 56.1 Statement ¶ 3; Def.'s 56.1 Statement ¶ 37; Tr. 23:13-17). Accordingly, the "Prior Acts" provision is not applicable in this case. *See e.g. Chunmuang,* 151 N.J. at 95 (internal citations omitted) ("exclusions are presumptively valid and will be given effect if specific, plain, clear, prominent, and not contrary to public policy").

At oral argument before this Court, Plaintiff's attorney admitted to Plaintiff's knowledge of the "counseling incident." (Tr. at 4:23-5:2; 6:6-8). Plaintiff's attorney acknowledged that Plaintiff received Doerr's first text message, and proceeded to meet with and provide advice to Doerr as to his marriage. (*Id.*). Thereafter, in May 2009, Plaintiff received a second text message from Doerr. (Tr. at 16:22-17:16). Plaintiff subsequently informed his superiors of Doerr's text message regarding discovery of the affair. (Tr. at 17:16-23). Plaintiff's superiors then told him to flee to Canada to avoid service of process in Doerr's pending lawsuit. (Tr. at 18:10-15). Based on these facts, Plaintiff's claim that he was only aware of the "counseling incident" upon being served with Doerr's complaint in October 2010 is unpersuasive. (*See* Tr. 17:19-18:15). Therefore, there is no material question of fact that Plaintiff's "counseling incident" is not covered under the policy. Accordingly, Defendant's motion for summary judgment is **granted**.

## V. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is **granted**. Plaintiff and Plaintiff-Intervenor's motion for summary judgment is **denied**.

An appropriate Order accompanies this Opinion.

JOSE L. LINARES
U.S. DISTRICT JUDGE

Dated: May 29, 2014

9